# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**KAREN BABCOCK,**
    **Plaintiff,**

  v.                Case No. 21-C-691

**TOWN OF SUGAR CREEK, et al,**
    **Defendants.**

## ORDER

  Karen Babcock brings federal and state constitutional claims against the Town of Sugar Creek as well as state law claims against the town and her neighbors, including Robert Limosani and Amy Odette. At all times relevant to Babcock's complaint, Acuity, A Mutual Insurance Company, provided Limosani and Odette insurance coverage under a homeowner's policy and an umbrella policy. Acuity has been defending Limosani and Odette under a reservation of rights. Acuity intervened and now moves for summary judgment, seeking a declaration that the policies do not provide coverage for the claims in Babcock's complaint and that it has no continuing duty to defend and no duty to indemnify Limosani and Odette. For the reasons below, I will deny Acuity's motion.

### I.  SUMMARY JUDGMENT STANDARD

  A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. I view the evidence in the light most favorable to the non-movant and must

grant the motion if no reasonable juror could find for that party, *id.*, and must draw all reasonable inferences in favor of the plaintiff as the non-moving party, *Kirsch v. Smith*, 894 F. Supp. 1222, 1228 (E.D. Wis. 1995), *aff'd*, 92 F.3d 1187 (7th Cir. 1996) (citing *Anderson*).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. *Brummett v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## II. DISCUSSION

Acuity seeks a declaratory judgment on its duty to defend and duty to indemnify Limosani and Odette under their homeowner's and umbrella insurance policies. "The interpretation of an insurance policy is a matter of state law," *Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 777 (7th Cir. 2015), and the parties agree that Wisconsin law applies here. Wisconsin has a well-established three-step process for duty to defend cases:

> First, a reviewing court determines whether the policy language grants initial coverage for the allegations set forth in the complaint. If the allegations set forth in the complaint do not fall within an initial grant of coverage, the inquiry ends. Id. However, if the allegations fall within an initial grant of coverage, the court next considers whether any coverage exclusions in the policy apply. If any exclusion applies, the court next considers whether an exception to the exclusion applies to restore coverage. If coverage is not restored by an exception to an exclusion, then there is no duty to defend.

*Water Well Sols. Serv. Grp., Inc. v. Consol. Ins. Co.*, 2016 WI 54, ¶ 16, 369 Wis. 2d 607, 620–21, 881 N.W.2d 285, 291–92 (internal citations omitted). The insured has the burden

of establishing that coverage applies, and the insurer has the burden of establishing that an exclusion applies. *Just v. Land Reclamation, Ltd.*, 151 Wis. 2d 593, 605, 445 N.W.2d 683, 688 (Ct. App. 1989), *rev'd on other grounds*, 155 Wis. 2d 737, 456 N.W.2d 570 (1990).

The duty to defend is based on the nature of the claim against the insured, not its merits. *Water Well*, 2016 WI 54, ¶ 17. To determine whether that duty exists, I must "compare the four corners of the underlying complaint to the terms of the entire insurance policy." *Id.*, ¶ 15. I must liberally construe the allegations of the complaint and make all reasonable inferences in favor of the insured. *Id.* "What is important is not the legal label that the plaintiff attaches to the defendant's (that is, the insured's) conduct, but whether that conduct as alleged in the complaint is at least arguably within one or more of the categories of wrongdoing that the policy covers." *Curtis-Universal, Inc. v. Sheboygan Emergency Med. Servs., Inc.*, 43 F.3d 1119, 1122 (7th Cir. 1994).

The "insurance policy is construed to give effect to the intent of the parties, expressed in the language of the policy itself, which [courts] interpret as a reasonable person in the position of the insured would understand it." *Danbeck v. Am. Fam. Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 193, 629 N.W.2d 150, 153. The words of an insurance policy are given their common and ordinary meaning. *Id.* If the language is unambiguous, I must enforce it as written. *Id.* However, if the language is ambiguous (i.e., it is susceptible to more than one reasonable interpretation), I must construe it against the insurer. *Id.* Relatedly, if an exclusion's effect is uncertain, then I must "narrowly or strictly construed [it] against the insurer." *Am. Fam. Mut. Ins. Co. v. Am. Girl, Inc.*, 2004 WI 2, ¶ 24, 268 Wis. 2d 16, 33, 673 N.W.2d 65, 73.

3

### A. Nature of Babcock's Claims

The complaint's allegation regarding Limosani and Odette concern a property dispute in the Blue Wing Estates Subdivision. The subdivision's plat vests "title or fee" to Norman Avenue, Rawlins Avenue, and Byron Avenue ("the Roads") "in the owners of the property abutting thereon." ECF No. 1, ¶ 19. The Roads "are to be privately maintained by abutting land owners of property." *Id.* Babcock owns four lots ("the Babcock Lots") that abut the Roads. *Id.*, ¶¶ 5, 20. Limosani also owns four such lots, and Odette owns twelve. *Id,* ¶¶ 10–11, 20.

In 2009, Robert Rutzen, Babcock's father, began clearing the Roads to allow access to the Babcock Lots *Id.*, ¶ 23. Limosani and Odette brought a state court action against Rutzen and all the defendants to this current action and sought a declaratory judgment that Rutzen had improperly used and maintained the Roads. *Id.*, ¶¶ 25–26. The state court denied Limosani and Odette's summary judgment motion, dissolved a temporary restraining order against Rutzen, and awarded judgment to Rutzen and Babcock on September 9, 2011. *Id.*, ¶¶ 28–29.

Since then, Limosani, Odette, and other defendants have disputed Babcock's right to mow, trim trees, clear brush, and otherwise maintain the Roads. *Id.*, ¶ 30. On September 18, 2017, Limosani and Odette attended a Town of Sugarcreek board meeting and complained that Babcock hired someone to mow the Roads. *Id.*, ¶ 38. At Limosani's request, the Town sent a letter to Babcock demanding that she "cease and desist hiring someone to mow Norman Avenue, or taking any further action with regard to Norman Avenue." *Id.*, ¶ 39.

The complaint alleges that Limosani and Odette "intentionally and wrongfully interfered with Babcock's use, maintenance, and improvement of the Roads." *Id.*, ¶ 53.

4

As a result, Babcock's "safe and convenient use and enjoyment of the Roads" have been "impaired" and her "access to the Babcock Lots" has been "obstructed and diminished." *Id.*, ¶ 55.

The complaint therefore alleges that Limosani and Odette have intruded on two distinct property interests held by Babcock. The first is her interest in the Roads. The second is her interest in the Babcock Lots. These are the claims and related allegations that must be compared to the policies' terms.

### B. Acuity's Duty to Defend

Acuity concedes that the homeowner's policy and the umbrella policy both grant initial coverage to Limosani and Odette for the allegations in Babcock's complaint. However, the parties dispute the applicability of four exclusions in the homeowner's policy and two exclusions in the umbrella policy.

#### i. Exclusions for property damage to property owned by the insured

The homeowner's policy and the umbrella policy both contain an owned property exclusion that precludes coverage for "property damage to property owned by the insured." ECF No. 63-1 at 17, 100. The policies define "property damages" to include "loss of use of tangible property." ECF No. 63-1 at 5, 99.

The owned property exclusions clearly do not apply to the claim regarding the Babcock Lots. The complaint alleges that Babcock is the fee owner of the Babcock Lots. There is no allegation that Limosani and Odette owned those lots.

The parties dispute whether the owned property exclusions apply to the claim regarding the Roads. Acuity contends that the exclusions apply because the complaint alleges that Babcock suffered a loss of use of the Roads, which are owned, in part, by

5

Limosani and Odette. Limosani and Odette respond that the exclusions only preclude coverage for loss of *their* use of the Roads, not other cotenants' loss of use.

The unambiguous language of the owned property exclusions precludes coverage for the claim regarding the Roads. The complaint alleges that ownership of the Roads is vested in all owners of property that abuts them. ECF No. 1, ¶ 19. It alleges that Limosani and Odette own property that abuts the Roads. *Id.*, ¶¶ 9–10. Finally, it alleges that Limosani and Odette intentionally and wrongfully interfered with Babcock's use, maintenance, and improvement of the Roads and impaired "her safe and convenient use and enjoyment of the Roads." *Id.*, ¶¶ 53, 55. Putting these allegations together, Babcock allegedly suffered a loss of the use of the Roads, which are owned by Limosani and Odette. That clearly constitutes property damage (loss of use of tangible property) to property (the Roads) owned by the insured (Limosani and Odette).

Limosani and Odette's proposed interpretation—that the exclusion only precludes coverage for loss of *their* use of their property—improperly limits the unambiguous language of the exclusion. It would narrow the definition of property damage to include only "*the insured's* loss of use of tangible physical property." I may not rewrite an unambiguous contract term consistent with Wisconsin law. *See Danbeck v. Am. Fam. Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 245 Wis. 2d 186, 193, 629 N.W.2d 150, 154 ("Where the language of the policy is plain and unambiguous, we enforce it as written, without resort to rules of construction or principles in case law. This is to avoid rewriting the contract by construction and imposing contract obligations that the parties did not undertake.").

Because I find that the owned property exclusions apply to the claims regarding the Roads, I need not determine whether other exclusions apply to this claim. *Water Well*,

2016 WI 54, ¶ 33 ("When one exclusion applies to preclude coverage, the inapplicability of another exclusion does not restore coverage."). The analysis below focuses exclusively on whether the remaining exclusions apply to the claim regarding the Babcock Lots.

### ii. Exclusions for property damage to property rented to, occupied, or used by or in the care of any insured

The homeowner's policy and the umbrella policy both contain an exclusion that precludes coverage for "property damage to property rented to, occupied or used by, or in the care of" an insured. ECF No. 63-1 at 17, 100.

This exclusion clearly does not apply to the claim regarding the Babcock Lots. There is no allegation that the Babcock Lots were rented to, occupied or used by, or in the care of Limosani and Odette.

### iii. Exclusion for insured's share of any loss assessment charged against all members of an association, corporation, or community of property owners

The homeowner's policy contains a loss assessment exclusion that precludes coverage for the insured's "share of any loss assessment charged against all members of an association, corporation or community of property owners." *Id.*

The parties dispute the meaning of "loss assessment" and "community of property owners." The homeowner's policy does not define either phrase. Acuity contends that legal damages may constitute a "loss assessment" and that a group of defendants who all own property constitute a "community of property owners." Limosani and Odette respond that "loss assessment" refers to "financial obligations apportioned between members of an association such as a condominium or homeowners association, or between members of a group of property owners with a common interests, such as a lakefront property owners' organization." ECF No. 67 at 9. They also contend that a

7

Case 2:21-cv-00691-LA   Filed 12/20/21   Page 7 of 11   Document 71

"community of property owners" refers to a group of property owners whose existence is independent from the lawsuit. In other words, multiple defendants, absent a relationship independent from the lawsuit, cannot constitute a "community."

Merriam-Webster defines "community" as "a unified body of individuals: such as a. the people with common interests living in a particular area . . . b. a group of people with a common characteristic or interest living together within a larger society." *Community*, Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/community. Similarly, Black's Law Dictionary defines "community" as: "1. A neighborhood, vicinity, or locality. 2. A society or group of people with similar rights or interests." *Community*, Black's Law Dictionary (11th ed. 2019).

In essence, Acuity is arguing that a lawsuit—and a lawsuit, alone—can serve as the interest that unifies a group of property owners into a "community of property owners." A reasonable person in the position of the insured would not understand the phrase "community of property owners" in that manner. What makes a group of property owners a "community of property owners" is their common interest in owning property in a particular area. For example, all property owners who own units in a condominium association. Under Acuity's interpretation, so long as two or more people who own property are named as defendants in a lawsuit, a "community of property owners" exists and the loss assessment exclusion applies. This would broaden the exclusion beyond what any reasonable insured would have contemplated.

Babcock has not sued an association or corporation that represents Blue Wing Estates Subdivision property owners. Nor has she sued every person who owns property in Blue Wing Estates Subdivision. She has sued nine neighbors who do not constitute a

"community of property owners" under the terms of the loss assessment exclusion. Thus, even assuming Acuity's interpretation of "loss assessment" is correct, the loss assessment exclusion does not apply to the claim regarding the Babcock Lots.

### iv. Exclusion for property damage to property of others caused intentionally by an insured who is 13 years of age or older

Under the heading "Additional Coverage" in the homeowner's policy, Acuity agrees to "pay, at replacement cost, up to $500 per occurrence for property damage to property of others caused by an insured." ECF No. 63-1 at 18. This coverage is precluded for property damage "[c]aused intentionally by an insured who is 13 years of age or older." *Id.* The homeowner's policy defines "property damages" to include "loss of use of tangible property." *Id.* at 5.

Acuity contends that this coverage does not apply because the complaint does not allege property damage to the Babcock Lots. Limosani and Odette respond that the complaint does allege property damage to the Babcock Lots. They then contend that the exclusion does not apply because the complaint does not allege that they intentionally caused that property damage.

The complaint alleges that Limosani and Odette's conduct has "obstructed and diminished" Babcock's "access to the Babcock Lots." ECF No. 1, ¶ 55. One certainly suffers a "loss of use" of a property when their access to that property is obstructed and diminished. Therefore, this provision grants initial coverage to Limosani and Odette for the claim regarding the Babcock Lots.

The exclusion to this coverage is triggered if the property damage is "caused intentionally by an insured." This unambiguous language requires the insured to have subjective intent to cause the property damage, as opposed to objective intent. *See*

9

*Fetherston v. Parks*, 2014 WI App 2, ¶¶ 8-9, 352 Wis. 2d 472, 478–79, 842 N.W.2d 481, 484. Objective intent exists "where the insured's conduct is substantially certain to result in injury." *Id.*, ¶ 9. Subjective intent exists "where the insured determines to cause injury." *Id.*

The only allegation regarding Limosani and Odette's intent states that they "intentionally and wrongly interfered with Babcock's use, maintenance, and improvement of the Roads." ECF No. 1, ¶ 53. This allegation establishes subjective intent to damage the Roads. It might also establish objective intent to damage the Babcock Lots. But it does not establish subjective intent to damage the Babcock Lots. The complaint is silent on whether Limosani and Odette determined to diminish and obstruct Babcock's access to the Babcock Lots. From this silence, it is reasonable to infer that Limosani and Odette did not intentionally cause the property damage to the Babcock Lots. Thus, this exclusion does not apply.

## III. CONCLUSION

Acuity concedes that the homeowner's policy and the umbrella policy grant initial coverage to Limosani and Odette for the claims in Babcock's complaint. It has established that the owned property exclusions in the homeowner's policy and the umbrella policy apply to the claim related to the Roads. However, it has failed to establish that the four exclusions in the homeowner's policy or the two exclusions in the umbrella policy apply to the claim regarding the Babcock Lots.

10

Case 2:21-cv-00691-LA   Filed 12/20/21   Page 10 of 11   Document 71

**IT IS THEREFORE ORDERED** that Acuity's motion for summary judgment is **DENIED.**

Dated at Milwaukee, Wisconsin, on this 20th day of December, 2021.

s/Lynn Adelman
LYNN ADELMAN
United States District Judge